IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DEMETRIAS LASHAUN TURNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-039 |
| | ) | |
| COMMISSIONER TIMOTHY WARD; | ) | |
| LIEUTENANT MICHELLE HARDY; | ) | |
| ANTOINNE CALDWELL; SERGEANT | ) | |
| GREEN; CHABARA BRAGG; | ) | |
| UNIT MANAGER GRIER; MS. SALEM; | ) | |
| JOHNSON STATE PRISON MEDICAL | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, imprisoned at Telfair State Prison in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983.  He is proceeding *pro se* and *in forma pauperis* ("IFP").  Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

## I.   SCREENING THE COMPLAINT

### A.   BACKGROUND

Plaintiff names the following Defendants: (1) Commissioner Timothy Ward, (2) Warden Antoinne Caldwell, (3) Lieutenant Michelle Hardy, (4) Sergeant Green, (5) Medical Unit Manager Chabara Bragg, (6) Unit Manager Grier, (7) Unit Manager Ms. Salem, and (8) Johnson State

Prison Medical Department.  (Doc. no. 1, pp. 1, 4.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff was previously imprisoned in Johnson State Prison from 2020 until 2022.  (Id. at 4.)  Because Plaintiff's aunt is a Superior Court Judge of the Oconee Judicial Circuit, Plaintiff feared for his safety and sought help from Defendant Hardy and Lieutenant Thompson.  (Id.)  However, they denied Plaintiff any help.  When Plaintiff urged them to reconsider, they threw him head down into a toilet while he his hands were cuffed behind his back.  (Id.)  Lieutenant Hardy informed inmates of Plaintiff's judicial family member and suggested he should be injured or killed.  (Id.)

On May 15, 2021, Plaintiff visited Defendant Salem and requested a transfer from general population for his safety.  (Id. at 5, 7.)  Defendant Salem complied with his request and took him to the medical unit, but later returned him to general population because she needed bed space. (Id. at 7.)  On May 17, 2021, inmates in the J block common area surrounded Plaintiff and threatened to stab him with knives.  (Id.)  Plaintiff ran to the lobby to seek Deputy Warden of Security Watson's help.  (Id.)  Deputy Warden Watson told him to return to his dorm, to which Plaintiff complied, but soon returned after being threatened by the inmates again.  (Id.)  Deputy Warden Watson told Defendant Green to take Plaintiff to "the hole" for punishment.  (Id.)  Defendant Green forcefully threw Plaintiff into a shower, kicked him in the back, and punched him several times.  (Id.)  Defendant Grier ran over to see what was going on.  (Id.)  Defendant Green dragged Plaintiff up a flight of stairs only to push him back down.  (Id.)  Since Plaintiff's hands were cuffed behind his back, he hit his head against a wall at the bottom of the stairs.  (Id.)  Plaintiff was then thrown into a pole.  (Id. at 8.)  At an unknown point, Defendant Hardy tased Plaintiff.  (Id.)

Plaintiff has been on suicide watch four times despite only once expressing contemplations of suicide. (Id.) While on suicide watch, Plaintiff was forced to sleep in "feces filled rooms for up to three days" during which "he passed out after having a seizure and was left unattended." (Id.) Back in general population, Defendant Bragg intentionally left Plaintiff's cell door open, telling him "She would do anything to make sure [he] got injured." (Id.) Defendant Grier forced inmate Devontae Lovett into Plaintiff's cell because Lovett had been sentenced by Plaintiff's aunt. (Id.) Defendant Grier refused to allow Plaintiff to take showers for weeks at a time. (Id.) Defendant Bragg intentionally disrupted his parole application by not enrolling him in "RSAT," a requirement for the parole application. (Id. at 8-9.) Plaintiff's parole was denied on May 17, 2021, because he did not complete the RSAT. (Id.) Plaintiff claims Defendant Bragg acted intentionally because "she thought [he] was gonna tell on her and her side job with inmates." (Id.)

On May 23, 2021, Defendant Hardy came to Plaintiff's cell with other inmates and stated, "she was coming to torture [him]." Defendant Hardy blamed Plaintiff as "the reason that she couldn't get in any of her contraband" and he "made her lose a lot of money." (Id.) Defendant Hardy thought this because Plaintiff saw her with contraband, and she thought he reported her. (Id.) Plaintiff barricaded his cell door in response. (Id.) Defendant Hardy declared Plaintiff suicidal and called maintenance personnel to open the barricaded door. (Id.) Plaintiff responded he did not want to be put on suicide watch again. (Id.) When maintenance personnel opened his barricaded cell door, Plaintiff ran for help and called 911. Defendant Hardy claimed Plaintiff had attempted to escape the prison. (Id.)

From October 26 through November 1, 2021, Defendant Grier and Officer Hudson hacked into Plaintiff's prison email account and disclosed its content to several inmates. (Id. at 10.) Plaintiff had previously filed a Prison Rape Elimination Act ("PREA") allegation against

Defendant Hardy because she stripped Plaintiff naked and made him walk around "in front of the entire general population." (Id.) Defendant Hardy stated she would get Plaintiff's "security closed and have [him] raped at a level 5 prison." (Id.) Due to the allegation, Defendant Bragg intentionally held a public PREA investigation. (Id.) Plaintiff's allegation was purposely misstated, and he was given a disciplinary report for lying. (Id.) Plaintiff was then moved to Telfair State Prison in retaliation. (Id. at 10-11.) Plaintiff's phone list was purposely given to other inmates. (Id.)

Plaintiff seeks compensatory and punitive damages in the amount of $500,000, termination of Defendants' employment, release from confinement, and reduction of his security level. (Id.)

## B.    DISCUSSION

### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*).  However, this liberal construction does not mean that the Court has a duty to re-write the complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. The Johnson State Prison Medical Department is Not Subject to Liability in a § 1983 Suit

Plaintiff fails to state a claim against the Johnson State Prison Medical Department because prisons are not subject to liability under § 1983.  See, e.g., Smith v. Chatham Cty. Sheriff's Dep't, No. CV 412-224, 2012 WL 5463898, at *2 (S.D. Ga. Oct. 22, 2012) ("[T]he [county jail] is not a legal entity capable of being sued."), *adopted by* 2012 WL 5463762 (S.D. Ga. Nov. 8, 2012); Sebastian v. Maynard, No. 5:10-CV-221, 2010 WL 3395040, at *2 (M.D. Ga. July 12, 2010) ("The Lamar County Detention Center is not a legal entity that is subject to suit

under 42 U.S.C. § 1983."), *adopted by* 2010 WL 3395154 (M.D. Ga. Aug. 21, 2010); Bolden v. Gwinnett Cty. Det. Ctr. Med. Admin. Med. Doctors & Staff, No. 1:09-CV-1966, 2009 WL 2496655, at *1 (N.D. Ga. Aug. 12, 2009) ("Jails, like the Gwinnett County Detention Center, are not legal entities subject to suit under § 1983 at all.").  Appropriate parties for suit under § 1983 include "persons" who participated in the alleged violation.  See 42 U.S.C. § 1983; see also Georgia Insurers Insolvency Pool v. Elbert Cnty., 368 S.E.2d 500, 502 (Ga. 1988) (limiting § 1983 liability to "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue") (quotations omitted). Therefore, Plaintiff fails to state a claim against Defendant Johnson State Prison Medical Department, and it should be dismissed as a party.

      **3.**      **Plaintiff Fails to State A Claim Against Defendants Ward and Caldwell**

Plaintiff fails to state a claim for relief against Defendants Ward and Caldwell.  The Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").  Here, Plaintiff never mentions Defendants Ward and Caldwell in relation to his claims, and there are no facts to suggest any basis for supervisory liability based on, for example, any prison policies or widespread customs and practices attributable to Defendants Ward and Caldwell.  Therefore, Plaintiff fails to state a claim upon which relief can be granted against them, and Defendants Ward and Caldwell should be dismissed.

    **4.**    **Plaintiff Fails to State a Failure to Protect Claim Against Defendants Salem, Bragg, Grier, and Hardy**

A prison official may violate an inmate's Eight Amendment right by acting with 'deliberate indifference' to a substantial risk of serious harm or disregarding a such a risk. Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012. "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34). To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3)

causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

> As the Eleventh Circuit explained,
>
> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Mere negligent failure to protect an inmate from an attack does not justify § 1983 liability. Brown, 894 F.2d at 1537. Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Plaintiff states that Defendant Salem granted his request to be housed in the medical unit for his safety but removed him twice because Defendant needed bed space. Plaintiff did not make Defendant Salem aware of any specific threats that would invoke a substantial risk of harm. (See doc. no. 1, pp. 5, 7.) Plaintiff's generalized fear of an attack based merely on the fact his aunt was a judge is insufficient. In addition, Defendant Salem removed Plaintiff from

the medical unit on two occasions simply because he needed bed space.  This legitimate penological reason falls well within the discretion of prison officials and cannot constitute deliberate indifference.  See, e.g. Bell v. Wolfish, 441 U.S. 520 547 (1979) ("[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").  Therefore, Plaintiff fails to state a claim against Defendant Salem.

Plaintiff next alleges Defendants Bragg and Grier left his cell door open and assigned an inmate to his cell that was sentenced by his aunt.  Plaintiff alleges no specific threat made against him by any inmate in his cell block or by the inmate assigned to his cell.  Further, Plaintiff mentions no attack or injury resulting from Defendants Bragg or Grier's actions.  Thus, Plaintiff fails to state a failure to protect claim against Defendants Bragg and Grier.

Finally, Plaintiff alleges Defendant Hardy threatened to arrange for his rape and torture but does not allege any actual attack or physical harm.  Mere threats and verbal abuse do not constitute a violation of Plaintiff's Fourth Amendment rights.  See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) ("[The plaintiff's] allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim."); Thomas v. Savannah News Press Co., No. CV 487-307, 1987 WL 113751, at *2-4 (S.D. Ga. Dec. 3, 1987) (Edenfield, J.) (finding no § 1983 claim based on verbal abuse and threats).

### 5.    Plaintiff Fails to State a Due Process Claim

Plaintiff asserts at least two of his placements on suicide watch were a violation of his Due Process.  To assert a valid due process claim, a plaintiff must plead facts sufficient to show, "(1) a

deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." Quintanilla v. Bryson, 730 F. App'x 738, 743 (11th Cir. 2018) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)).  Assuming Plaintiff has alleged facts sufficient to establish an atypical and significant hardship, he has failed to allege facts sufficient to establish constitutionally inadequate process.  Plaintiff alleges he was placed on suicide watch on four occasions and claims he only made suicidal statements once.  Without further information, Plaintiff appears to merely disagree with the finding he was suicidal and needed to be placed on watch.  He does not allege inadequate notice or denial of the right to be heard.

Further, even if Plaintiff had established a constitutionally inadequate process, he fails to show liability on behalf of a properly named defendant.  As already explained, the Eleventh Circuit has held that a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas, 535 F.3d at 1321-22 ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").  Here, Plaintiff never mentions any Defendant's involvement in the denial of any process. (Doc. no. 1, p. 8.)  For these reasons, Plaintiff fails to state a due process claim against any Defendant.

### 6.    Plaintiff Fails to State a Claim Against Defendants for Violating SOP and GDC Policies and Procedures Relating to PREA

Plaintiff generally alleges Defendants violated prison polices and procedures concerning inmate medical services and security supervision.  (See doc. no. 8, p. 6.)  An allegation of non-

compliance with a prison or jail regulation is not sufficient to give rise to a claim upon which relief may be granted.  See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting many prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designed to confer rights on inmates); Taylor v. White, Civ. No. 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10, 2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), adopted by, 2012 WL 403849 (S.D. Ala. Feb. 7, 2012).  Further, PREA does not provide a federal right enforceable in a § 1983 action.  See Hawkins v. Walden, No. 5-15-CV-208 (CAR), 2016 WL 5660338 at *7 n.66 (M.D. Ga. Sept. 28, 2016) (collecting cases).  Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendants based on any alleged violation of polices and procedures.

### 7.     Plaintiff Fails to State a Privacy Claim

Plaintiff generally alleges Defendant Grier hacked into his prison email account and disclosed information to other inmates.  These actions did not violate Plaintiff's Fourth Amendment rights because he had no expectation of privacy in a prison email account.  Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."); see also United States v. Harmon, 2008 WL 90153 (11th Cir. Jan.10, 2008) (unpublished) (affirming motion to suppress on the basis of Hudson because the pretrial detainee had no expectation of privacy in the contents of his notepad found in his cell).

8.      **Official Capacity Monetary Damages**

Plaintiff is suing Defendants in their individual and official capacities.  However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

## II.      CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** dismissal of all claims against Defendants Ward, Caldwell, Salem, and Johnson State Prison Medical Department, dismissal of the privacy claim related to Plaintiff's prison email account, and dismissal of all official capacity claims, failure to protect claims, due process claims, and PREA claims against all Defendants.  By separate Order, the Court directs service of process for Plaintiff's excessive force claims against Defendants Hardy, Green, and Grier, for Plaintiff's retaliation claim against Defendant Bragg, and for Plaintiff's bodily privacy claim against Defendant Hardy.

SO REPORTED and RECOMMENDED this 29th day of August, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA