IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DEMETRIAS LASHAUN TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-039 |
| | ) | |
| COMMISSIONER TIMOTHY WARD, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Telfair State Prison in Helena, Georgia, commenced the above-captioned civil rights case *pro se* concerning events alleged to have occurred at Johnson State Prison ("JSP") and is proceeding *in forma pauperis* ("IFP"). Defendants filed a pre-answer motion to dismiss, (doc. no. 18), which Plaintiff did not oppose. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 18), and this case be **DISMISSED** without prejudice and **CLOSED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initially named eight Defendants, and because he is proceeding IFP, the Court screened the complaint. (See doc. nos. 1, 2, 6.) Over objections from Plaintiff, (doc. no. 11), United States District Judge Dudley H. Bowen, Jr. dismissed Defendants Ward, Caldwell, Salem, and Johnson State Prison; the privacy claim related to Plaintiff's prison email account; failure to protect claims; due process claims; Prison Rape Elimination Act claims; and all

official capacity claims for monetary damages. (Doc. no. 13.) The Court allowed to proceed Plaintiff's excessive force claims against Defendants Hardy, Green, and Grier, retaliation claim against Defendant Bragg, and bodily privacy claim against Defendant Hardy. (Id.) Defendants Bragg, Green, Grier, and Hardy now move to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (See doc. no. 18.) Plaintiff did not respond to the motion, and it is therefore unopposed pursuant to Local Rule 7.5.

Plaintiff's complaint concerns events that took place while incarcerated at Johnson State Prison ("JSP"). (Doc. no. 1, p. 3.) Plaintiff alleges that because his aunt is a Superior Court Judge in the Oconee Judicial Circuit, Plaintiff feared for his safety at JSP and sought help from Defendant Hardy. (Id. at 5.) However, she denied Plaintiff any help. (Id.) When Plaintiff urged her to reconsider, she threw his head down into a toilet while his hands were cuffed behind his back. (Id.) Defendant Hardy informed other inmates of Plaintiff's judicial family member and suggested he should be injured or killed. (Id.)

On May 17, 2021, inmates in the J-block common area surrounded Plaintiff and threatened to stab him. (Id. at 5-7.) Plaintiff ran to the lobby to seek Deputy Warden of Security Watson's help. (Id. at 7.) Deputy Warden Watson told him to return to his dorm, to which Plaintiff complied, but soon returned after being threatened by the inmates again. (Id.) Deputy Warden Watson told Defendant Green to take Plaintiff to "the hole" for punishment. (Id.) Defendant Green forcefully threw Plaintiff into a shower, kicked him in the back, and punched him several times. (Id. at 7.) Defendant Grier ran over to see what was going on. (Id.) Defendant Green dragged Plaintiff up a flight of stairs only to push him back down. (Id.) Since Plaintiff's hands were cuffed behind his back, he hit his head against a wall at the bottom of the stairs. (Id.) Plaintiff was thrown into a pole. (Id. at 8.) At an unknown point, Defendant Hardy tased Plaintiff. (Id.)

Plaintiff has been on suicide watch four times despite only once expressing contemplations of suicide. (Id.) While on suicide watch, Plaintiff was forced to sleep in "feces filled rooms for up to three days" during which "he passed out after having a seizure and was left unattended." (Id.) Back in general population, Defendant Bragg intentionally left Plaintiff's cell door open, telling him, "she would do anything to make sure [he] got injured." (Id.) Defendant Grier forced inmate Devontae Lovett into Plaintiff's cell because Lovett was sentenced by Plaintiff's aunt. (Id.) Defendant Bragg intentionally disrupted Plaintiff's parole application by not enrolling him in RSAT, a requirement for the parole application. (Id. at 8-9.) Plaintiff's parole was denied on May 17, 2021, because he did not complete the RSAT. (Id.) Plaintiff claims Defendant Bragg acted intentionally because "she thought [he] was gonna tell on her and her side job with inmates." (Id.)

On May 23, 2021, Defendant Hardy came to Plaintiff's cell with other inmates and stated she was "coming to torture [him]." (Id. at 9.) Defendant Hardy blamed Plaintiff as "the reason that she couldn't get in any of her contraband" and he "made her lose a lot of money." (Id.) Defendant Hardy thought this because Plaintiff saw her with contraband, and she thought he reported her. (Id.) Plaintiff barricaded his cell door in response. (Id.) Defendant Hardy declared Plaintiff suicidal and called maintenance personnel to open the barricaded door. (Id.) Plaintiff responded he did not want to be put on suicide watch again. (Id.) When maintenance personnel opened the door, Plaintiff ran for help and tried to call 911. (Id.) Defendant Hardy claimed Plaintiff had attempted to escape the prison. (Id.)

Plaintiff seeks compensatory and punitive damages in the amount of $500,000.00, termination of Defendants' employment, release from confinement, and reduction of his security level. (Id. at 6, 11.) Plaintiff alleges he filed grievances but there was "a big cover up which led

3

to serious retaliation against" him by staff. (Id. at 3.) Plaintiff claims he appealed a grievance to inmate affairs but never received an answer. (Id. at 4.)

Defendants produced the affidavit of Lataksha Perry, the Chief Grievance Counselor at JSP. (See doc. no. 18-2 (Perry Aff.).) The Counselor's responsibilities include ensuring compliance with the Georgia Department of Corrections ("GDOC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. at ¶¶ 4-8.) The Counselor identified three grievances (nos. 318415; 331466; and 338265) Plaintiff filed at JSP concerning this lawsuit. (Id. at ¶¶ 22-25 & Exs. C-F.) Grievances no. 318415 was not processed because Plaintiff wished to drop it and no. 331466 was not processed because Plaintiff refused to sign. (Perry Aff. ¶¶ 22-25.) Both of these grievances included allegations of excessive force and retaliation. (Id. at Ex. C.) Grievance no. 338265, discussing Plaintiff's access to medications, was not filed until May 3, 2022, and was later appealed on July 20, 2022. (Id. at ¶ 25 & Ex. F.)

## II.   DISCUSSION

### A.   Defendant's Motion to Dismiss Should be Granted Because Plaintiff Failed to Exhaust His Administrative Remedies Prior to Filing this Lawsuit

#### 1.   The Legal Framework

Where, as here, defendants filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendants' motion will

be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

5

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotations omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016). Here, Plaintiff alleges he filed grievances but there was "a big

cover up which led to serious retaliation against" him by staff. (Doc. no. 1, p. 3.) Plaintiff claims he appealed a grievance to inmate affairs but never received an answer. (Id. at 4.)

### 2.    The Administrative Grievance Procedure

The administrative grievance procedure applicable in this case is GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Perry Aff. ¶ 5 & Ex. A.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet. Id. § IV(C)(1)(c-d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his

designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § IV(C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### 3. Plaintiff's Failure to Exhaust

Plaintiff signed his complaint on April 26, 2022, and the complaint was filed in the Southern District of Georgia on May 6, 2022. (Doc. no. 1, p. 6.) Plaintiff's grievance history shows he filed three grievances, (nos. 318415; 331466; and 338265), concerning the events complained of. (Perry Aff. ¶¶ 22-25 & Exs. C-F.) Plaintiff acknowledges there is a grievance procedure and that he filed grievances and an appeal, however, he did not provide any information about the outcome of his appeal. (Doc. no. 1, pp. 3-4.) Since Plaintiff did not respond to the motion to dismiss, there is no dispute these are the only grievances he filed concerning his claim against Defendants. Thus, under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate because of the uncertainty about the appeal outcome, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendants have the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Office, 23 F.4th 1299, 1307 (11th Cir. 2022). Here, Defendants produced evidence of Plaintiff's grievance history at JSP, showing grievances no. 318415 and no. 331466 were never

completed due to Plaintiff's own request. (Perry Aff. ¶¶ 22-25.) Defendants provide documentation showing grievance no. 338265 is still pending appeal. (Id. at ¶ 25.) Plaintiff does not dispute this evidence. In fact, Plaintiff admits he had not yet received a response to his appealed grievance when he signed his complaint. (Doc. no. 1, p. 4.) Defendants therefore satisfy their burden under Turner in showing Plaintiff did not exhaust the two-part grievance procedure. 541 F.3d at 1082-83.

When faced with the Perry Affidavit signed under penalty of perjury, Plaintiff did not respond to Defendants' motion to dismiss. Thus, it is clear Plaintiff does not dispute or address any of Defendants' factual information regarding exhaustion and the availability of an administrative remedy that he simply did not allow to run its course prior to filing this lawsuit. Thus, Plaintiff did not exhaust the two-part grievance procedure. The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159.

Therefore, based on the above, the Court finds Defendants have met their burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit. Because Plaintiff did not exhaust his administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 18), and this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 24th day of October, 2022, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA